STANLEY WITKOWSKI (LEONORA WITKOWSKI, EXECUTRIX) *vs.* SAMUEL GOLDBERG.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 7th—decided December 20th, 1932.

*DeLancey S. Pelgrift,* for the appellant (defendant).

*Walter B. Kulikowski* and *David M. Reilly,* for the appellee (plaintiff).

AVERY, J.   A verdict having been returned in favor of the plaintiff by the jury, the defendant made a motion to set it aside, which was denied by the trial court. The real contention of the defendant is that the evidence was insufficient to show that the injuries received by the plaintiff, and his subsequent death, were the proximate result of the accident in which he was injured.

From the evidence, the jury might reasonably have found that on January 12th, 1931, about five o'clock in the afternoon, the plaintiff's intestate was driving a horse attached to a milk wagon in an easterly direction on Fifth Street in the city of Derby; and, when within about twenty-five feet of the intersection of Fifth and Olivia Streets, the horse and wagon was struck by an automobile operated by the defendant, Goldberg. There had been a light fall of snow before the collision which had rendered the pavement wet. The plaintiff's intestate was traveling at a reasonable rate of speed on his right-hand side of the center line of Fifth Street. The wagon had a lighted lamp hanging from the left corner of the roof. The defendant, who had been driving north on Olivia Street, turned

his automobile suddenly and sharply to his left, cutting the corner of the intersection, coming into Fifth Street on his left-hand side of its center line, striking the horse and shafts of the wagon with the front of his automobile, knocking the horse down, throwing the plaintiff's intestate about inside the wagon, and causing cases containing bottles of milk to be thrown down upon him. The jury might reasonably have concluded that the defendant was negligent in one or more of the ways mentioned in the complaint, and particularly in failing to obey the rules of the road in turning from Olivia Street into Fifth Street at the intersection, and failing to have his automobile under proper control while making the turn.

In the accident, plaintiff's intestate received lacerations about the head, face, mouth, lower lip and tongue, and was severely injured over a large area of the abdomen and right thigh. Except on two occasions when he went out with his sons, once to explain where the accident occurred and once to show where his customers lived, he remained in bed from the date of the accident until February 2d of that year, when he was taken to the Griffin Hospital in Derby. Except for an examination made by a physician for the defendant, who found his lip infected, he was not attended by any physician until February 1st. He was then found to be acutely ill, with considerable swelling and infection of his mouth and tongue, very extensive contusions of the abdominal wall, and marked ecchymosis on the right side, and with a hernia about the size of a large grapefruit in the right inguinal region. He was taken to the hospital on February 2d and an operation was performed February 9th, 1931. On that day, symptoms of anemia appeared. On June 20th, he was re-admitted to the hospital, his physician having determined, at that time, that he was suffering from

lymphatic leukemia. He remained in the hospital until July 27th, 1931, when he returned to his home, and stayed there until he died, January 6th, 1932.

The defendant claims that the evidence does not show that the hernia was caused by the injury received in the accident. In addition to the testimony as to the plaintiff's good health before the accident and his physical condition and pain in the region of the lower abdomen immediately thereafter and up to the time that the hernia operation was performed, the surgeon who performed the operation expressed the opinion that the hernia was due to injury received in the accident. With reference to the disease lymphatic leukemia, from which he subsequently died, physicians called by the plaintiff expressed their professional opinion that the disease resulted from the automobile accident and was caused thereby; that it was due to infection of the blood coming from the wounds on his lip and mouth. It is true that witnesses produced by the defendant were of the opinion that the disease originated from other causes. The plaintiff's witnesses went further than to simply testify that the disease might have or was likely to have resulted from the injury, and testified, in substance, that in their opinion, taking into consideration all the facts presented, and considering every other hypothesis suggested, it was reasonably probable that the disease resulted from the injury and, therefore, the injury was its direct cause. Such testimony is sufficient to remove the case from the realm of speculation and presents a question of fact to be determined by the trier. *Madore* v. *New Departure Mfg. Co.*, 104 Conn. 709, 714; 134 Atl. 259; *Quackenbush* v. *Vallario*, 114 Conn. 652, 657, 159 Atl. 893; *Bates* v. *Carroll*, 99 Conn. 677, 679, 122 Atl. 562. The rule is stated in *McMinis* v. *Philadelphia Rapid Transit Co.*, 288 Pa. St. 377, 380, 135 Atl. 722, 723:

"It must be made to appear, with reasonable certainty, that the resulting condition was brought about by the act complained of. . . . This may be shown by the opinions of qualified experts who state plainly that, in their professional views, the accident was the superinducing cause." The court did not err in refusing to set aside the verdict.

There is no error.

In this opinion the other judges concurred.