[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO REARGUE
Upon reargument of this court's decision, on the plaintiff's Motion to File Late Disclosure of Expert Witness, the plaintiff's counsel pointed out something which was not brought to this court's attention in the first argument, namely that at the actual trial, despite his prior order of preclusion of expert testimony, the trial judge nonetheless permitted testimony from a psychologist about whether or not administration of excessive amounts of allergy medicine could have caused the plaintiff's post traumatic stress syndrome.
The Court finds that late disclosure of Dr. Holzman, the psychologist, should be permitted but that late disclosure of any additional medical experts who did not testify at the prior trial should not be permitted. CT Page 10864
Some reference to the tangled prior procedural history of this case is in order.
On June 12, 1986, the plaintiff, Geneva Sampiere, filed a lawsuit against the defendants, Dr. Joel Zaretsky and Francine Garafolo, alleging that the defendants negligently administered allergy serum to the plaintiff on June 12, 1984 which caused an adverse reaction.
On September 19, 1986, the defendants served the plaintiff with interrogatories together with a request for production. Interrogatory #82 asked the plaintiff if she had "employed, retained, or consulted an expert to act on [her] behalf in any matter pertaining to this action." The plaintiff answered "[n]one retained at this time, will supplement later." Interrogatory 84 asked the plaintiff to "[i]dentify by name, address and specialty each person whom the plaintiff expects to call as an expert witness at the trial of this matter . . . ." The plaintiff answered, "[n]o [expert] known at this time." (Defendant's First Set of Interrogatories, pp. 42, 44).
On December 11, 1989, more than three years after the defendants served the above interrogatories and one week after the case had been called to begin trial, the plaintiff filed a Supplemental Disclosure of Expert Witness identifying Dr. Arnold D. Holzman, Ph.D. and Robert A. Lanzi, M.D. as "expert witnesses who may offer expert testimony at the trial. . . ." (Supplemental Disclosure of Expert Witness, p. 1). In the Supplemental disclosure, the plaintiff states that
 a. Dr. Holzman is expected to testify that [the plaintiff's] injuries are proximately caused by the defendant's actions. Dr. Holzman will also testify regarding his psychological evaluation of [the plaintiff] including her current psychological status and prognosis.
 b. Dr. Lanzi is expected to testify that the defendants' actions did not meet the applicable standard of care and were the proximate cause of her injuries.
(Supplemental Disclosure of Expert Witness, p. 2).
On December 18, 1989, the defendants filed a Motion in Limine requesting that the "court preclude the plaintiff from using Dr. CT Page 10865 Lanzi and Dr. Holzman, the plaintiff's treating physicians, from offering expert testimony at trial against Dr. Zaretsky and Francine Garafolo." (Motion in Limine, p. 1). The defendants argued that the plaintiff's failure to disclose experts in a timely fashion deprived the defendants of future discovery and "therefore, the plaintiff should be precluded from offering Dr. Holzman and Dr. Lanzi as experts at trial on the issues of standard of care, causation and damages." (Motion on Limine, p. 3). The motion was argued on January 16, 1990 in Milford Superior Court before Judge Meadow. The motion was denied by Judge Meadow on January 16, 1990 without a memorandum of decision. However, Judge Meadow ordered that the depositions of Dr. Lanzi and Dr. Holzman be taken without limitation. (Motion for Order of Deposition/Motion for Continuance, p. 4).
Dr. Lanzi's deposition was taken on January 23, 1990. During his deposition, Dr. Lanzi testified that he did not agree to testify as an expert. (Dr. Lanzi's Deposition, pp. 37-39). In addition, Dr. Lanzi's attorney wrote a letter to the plaintiff's attorneys stating that Dr. Lanzi "is not willing to agree to be disclosed as an expert witness or called as an expert witness against his will to testify as to matters outside of the treatment of Mrs. Sampiere." (Letter from Barry Johnson-Faye, dated December 15, 1989).
Dr. Holzman's deposition was taken on February 14, 1990. During his deposition, Dr. Holzman, a clinical psychologist, was asked whether it was his testimony "[t]hat [he] will not offer any opinions at trial regarding the standard of care as it related to Dr. Zaretsky or Francine Garafolo with regard to treatment that they rendered to Mrs. Sampiere on June 12, 1984?" Dr. Holzman answered, "Of course I would not." (Dr. Holzman's Deposition, p. 71). In addition, Dr. Holzman was asked if he was "aware of whether Mrs. Sampiere has ever had another reaction to any medication since June 12th of 1984?" Dr. Holzman answered "I don't feel competent to answer that question because I'm not a physician." (Dr. Holzman's Deposition, p. 75).
On March 7, 1990, the defendants filed a Motion for Summary Judgment on the grounds that in the absence of expert testimony regarding the standard of care and a breach of that standard, the plaintiff would be unable to demonstrate that the defendants' breach of the standard of care was the proximate cause of the plaintiff's injuries. (Motion for Summary Judgment, p. 1). On May 1, 1990, the court, Meadow, J., denied the defendants' motion stating CT Page 10866 that
 [o]ne of the experts who the plaintiff disclosed refuses to act as an expert. However, the defendant may have been of `such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that renders the testimony of a witness not necessary.' The admission by the defendant as to the increased dosage of medication, can lead the trier of fact to find that the defendant had acted with gross want of care. (citation omitted).
(Memorandum of Decision, pp. 3-4).
On April 17, 1990, the defendants filed a Motion in Limine requesting that the "court preclude the plaintiff from offering expert opinion testimony at trial, on the issues of standard of care, deviation of the standard of care and proximate cause." (Motion in Limine, p. 3; see also p. 1). The defendants argued that
 the plaintiff has failed to disclose any expert witness who will testify regarding standard of care, or that the defendants were negligent in their standard of care and the treatment of the plaintiff and that their negligence caused the plaintiff's injuries.
 The plaintiff's failure to disclose an expert in a timely fashion has deprived the defendants of any future discovery to which they are entitled pursuant to the Practice Book [and such] late disclosure is in contravention to section 220 of the Practice Book. . . .
(Motion in Limine, p. 3, para. 9-10). This motion was granted by Judge Meadow on September 21, 1990 without a memorandum of decision. (Motion in Limine, #151, p. 4). It is clear however that based on his ruling in the earlier Summary Judgment, that Judge Meadow recognized that the defendant, as a party to a lawsuit, can make a binding judicial admission either by testimony or pleading, of some issue like medical negligence, and thereby relieve the plaintiff from the need for future proof on that issue.
Following the completion of trial testimony, the jury returned a verdict for the plaintiff in the amount of $70,000. (Plaintiff's Verdict). On December 17, 1990, the defendants filed a Motion to Set Aside the Verdict and a Motion for Judgment Notwithstanding the CT Page 10867 Verdict which were denied by the court, Meadow, J. on January 16, 1991. (Motion to Set Aside the Verdict, p. 2; Motion for Judgment Notwithstanding the Verdict, p. 2). The defendants appealed on the grounds that
 the trial court improperly (1) refused to grant their motion to set aside the verdict which alleged that the plaintiff failed to establish by expert testimony a breach of the standard of care and proximate cause, (2) instructed the jury that it could find gross negligence against the defendants, (3) allowed nonexpert testimony on the issue of proximate cause, and (4) instructed the jury that future medical expenses were a proper element of damages.
The court agreed with only the fourth claim and did not address the remaining claims in the opinion.
Sampiere v. Zaretsky, 26 Conn. App. 490, 491, 602 A.2d 1037 (1992). As a result, the Appellate Court reversed the trial court's decision and remanded the case for a new trial on both liability and damages. Id., 496.
On May 7, 1992, the plaintiff filed a Motion for Permission to File Supplemental Disclosure of Expert Witness requesting "permission to disclose an additional medical expert and to utilize such expert testimony at the re-trial of this case." (Motion for Permission to File Supplemental Disclosure of Expert Witness). The plaintiff states in the motion that "[t]he plaintiff utilized the defendant, Dr. Zaretsky, as his own expert in that Dr. Zaretsky essentially testified that the injection of ten times the normal amount would be a violation of the standard of care." (Motion for Permission to File Supplemental Disclosure of Expert Witness, p. 1, para. 2). The plaintiff argues that since the defendants objected to this testimony and alleged throughout the trial and on appeal "that it was error for the plaintiff's case to go to the jury without the testimony of a medical expert witness as to the issue of malpractice. . .the plaintiff wishes to eliminate any question of error by offering testimony of an independent medical expert on the issue of malpractice." (Motion for Permission to File Supplemental Disclosure of Expert Witness, p. 1, para. 1, 2).
This motion was denied by the court, Flynn, J., on August 20, 1992.
That August 20th Memorandum states that CT Page 10868
 Judge Meadow has already granted a Motion to Preclude Expert Testimony in 1990 after apparently determining that neither expert identified by the plaintiff had agreed to testify. No appeal was taken from the decision. This court does not find good cause established to permit prior to retrial another late disclosure of an expert witness, long after the rendering of Judge Meadow's preclusion decision merely because the plaintiff now claims that the defendant asserted during the earlier trial and on appeal that it was error for the case to have been submitted to the jury by the trial judge without testimony of a medical expert. . . . After the appeal and upon remand for a new trial, such procedural decisions of Judge Meadow which were not overturned by the Appellate Court are the law of the case.
(Memorandum of Decision, pp. 4-5).
As a result of this decision, on August 26, 1992, the plaintiff filed a Motion to Reargue on the grounds that Judge Flynn's "decision appears to have been based on two errors of fact:,
 1.) Judge Flynn stated that Judge Meadow had determined that "neither expert . . . had agreed to testify." In fact only one expert, the original treating physician had been reluctant to testify in the issue of malpractice. He did testify however as to his factual treatment.
 2.) In addition Judge Flynn held that this matter was already heard, weighed and determined by Judge Meadow and was now the law of the case and was not overturned by the Appellate Court. Judge Meadow never heard a motion to disclose another expert and never ruled that the plaintiff could not produce another expert. It is not correct that such is the law of the case.
(Motion to Reargue, p. 1). The plaintiff states that "rather than disclosing another expert just before [trial, the plaintiff] decided to and did use the defendant himself as an expert and he in fact testified that the giving of an overdose constituted a breach of the standard of care." (Motion to Reargue, p. 1).
On September 14, 1992, the defendants filed an objection to the plaintiff's motion to reargue stating the plaintiff's claimed errors of fact are not legitimate. (Objection to the plaintiff's motion to reargue, p. 2). The defendants argue that Judge Flynn correctly stated that neither expert agreed to present expert CT Page 10869 testimony and that Judge Meadow's decision to preclude the plaintiff from offering expert testimony is the law of the case. (Objection to the plaintiff's motion to reargue, p. 3).
However, upon reargument it has come to this court's attention that Judge Meadow did in fact allow one witness, Dr. Holzman, to give expert testimony after precluding it. At trial, Mr. Kolesnik, attorney for the plaintiff, asked Dr. Holzman "what the cause of the post-traumatic stress disorder was in Mrs. Sampiere." (Transcript, p. 666). The defendant objected for lack of foundation, inappropriate witness, and inappropriate facts from which to base the hypothetical on. (Transcript, p. 666) The court, Meadow, J., overruled the objection and Dr. Holzman answered "I assume that the precipitating event was the episode in her doctor's office . . . [t]he injection she received." (Transcript, pp. 666-667).
Little purpose would be served by dwelling on why the plaintiff in the first argument on the instant Motion did not bring this court's attention to the fact that Judge Meadow had permitted Dr. Holzman's expert testimony as to proximate cause at trial after granting a Motion to preclude it.
The Court grants reargument on the Motion to File Late Disclosure of Expert Witness because it regards that newly disclosed fact as important. Upon reargument, the court finds that late disclosure of Dr. Holzman, the psychologist, should be permitted but that the late disclosure of any additional medical experts who did not testify at the earlier trial should not be permitted for the following reasons.
First, the defendant is already on notice concerning the content of Dr. Holzman's proximate cause testimony and therefore the rationale requiring equitable notice to the defendant of what is to be proved, so that trial preparation can occur, embodied in P.B. Rule 220, and case law, Hartford v. Anderson Fairoaks, Inc.,7 Conn. App. 591 (1986), is not ill served by permitting the testimony actually allowed in the first trial to be offered in the new trial. Secondly, Dr. Holzman's expert testimony is important because the causal nexus between the negligence alleged on the part of the physician and the resulting harm must be established by expert testimony. Third, Judge Meadow as the trial judge, was in the best position to determine what should fairly be done concerning the admission of testimony. Fourth, federal precedent interpreting a rule similar to P.B. 220 in a similar factual situation approved such a result. Even when a trial court had erred CT Page 10870 in admitting expert testimony of an expert witness not properly disclosed under Fed.R.Civ.P. 26(6) (4) and 26e (the functional federal equivalents of P.B. 220), the Court of Appeals of the Fifth Circuit, permitted such expert testimony in the second trial, which had been improperly admitted in the first trial, as if the party had properly complied with the rules requiring identification of witnesses. Bradley v. U.S., 866 F.2d 120 (5th Cir. 1989). Fifth, there can be no surprise to the defendant as to Holtzman's testimony which he already heard in the first trial. Sixth, where the testimony of an expert is offered, "[i]t is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." Katsetos v. Nolan, 170 Conn. 637, 647. Psychologists are not licensed in the state of Connecticut unless they hold a doctorate in that discipline and have other satisfactory experience. Connecticut General Statutes 20-188. In a case where a plaintiff claimed that excessive doses of x-ray radiation caused him injuries, the Appellate Court has already ruled that a psychologist was a competent witness to offer diagnosis testimony as an expert. Campbell v. Pommier, 5 Conn. App. 29, 36-37.
Under these circumstances, reargument is permitted and the motion for late identification of Doctor Holzman, Ph.D. is granted to allow Dr. Holzman to offer the same general opinion evidence regarding proximate cause offered at the original trial to be offered at the new trial.
As to the identification of further experts whose testimony was not offered in the first trial, the court stands by its decision of August 19, 1992. No further amendment of the court's prior order as to other experts is warranted. This case is six, years old. It has already been tried and appealed once. The court takes notice of the fact that Dr. Lanzi had previously been identified in December 1989 as an expert who would testify as to the appropriate standard of care and proximate cause. It is admitted that no one checked with Dr. Lanzi before identifying him. Dr. Lanzi refused to testify. The plaintiff claims that Judge Meadow never decided a Motion To Make Late Identification of Additional Witnesses, and that therefore Judge Meadow's earlier decision precluding testimony of experts could not be the law of the case. This argument begs the question. The question is whether Judge Meadow precluded certain expert testimony. He did. That decision then became the law of the case. The only purpose late identification of experts now could have is to permit their later testimony at the new trial, something that Judge Meadow ruled could CT Page 10871 not be done in the first trial of this case. There simply can be no dispute that on September 21, 1990 Judge Meadow granted a Motion precluding the plaintiff from offering expert opinion testimony at trial on the issues of medical negligence and proximate cause. This is the very decision the plaintiff seeks to avoid by a late disclosure of expert. As to Judge Meadow's preclusion of expert testimony that he did not later permit at trial "`great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . .'"(internal citations omitted) Mulrooney v. Wambolt,215 Conn. 211, 222, especially in light of the "misleading character to the disclosures" (id) made by the plaintiff, brought to Judge Meadow's attention in the Motion itself. One does not identify an expert under P.B. Rule 220 as the plaintiff did, indicating what the expert's testimony will be, if the expert has never agreed to testify. As to the need of such testimony, the plaintiff already has available to her the defendant's admissions that the excessive dose administered by his nurse breached the standard of care. For all the reasons set forth in this and the court's prior memorandum, the further relief sought is again DENIED.
FLYNN, J.