*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MILLS SIDING AND ROOFING, LLC,

      Plaintiff-Appellant,

v

MARGIE ROSARIO and ANGEL ROSARIO,

      Defendants-Appellees.

FOR PUBLICATION
June 22, 2026
9:20 AM

No. 372914
Kalamazoo Circuit Court
LC No. 2024-000192-AV

Before: CAMERON, P.J., and KOROBKIN and BAZZI, JJ.

KOROBKIN, J. (*dissenting*).

I respectfully dissent. I would hold that the transaction in question was subject to, and violated, the Home Solicitation Sales Act (HSSA), MCL 445.111 *et seq*., thereby rendering the contract unenforceable. Accordingly, the circuit court did not err by reversing the district court's order, and I would affirm.

The HSSA is a consumer-protection statute that "prescribe[s] the rights and duties of parties to home solicitation sales[.]" 1972 PA 227, title. As stated in the majority opinion, the HSSA defines a home solicitation sale as

> a sale of goods or services of more than $25.00 in which the seller or a person acting for the seller engages in a personal, telephonic, or written solicitation of the sale, the solicitation is received by the buyer at a residence of the buyer, and the buyer's agreement or offer to purchase is *there given* to the seller or a person acting for the seller. [MCL 445.111(a) (emphasis added).]

In this case, plaintiff's central argument is that the statute's phrase "there given," *id*., means that for the HSSA to apply, the buyer must agree or offer to purchase the goods or services at the *time* of the solicitation, not just the place. Margie[1] did not sign the contract in question when plaintiff's door knocker initially appeared at her house. Therefore, plaintiff argues, Margie's

---

[1] Because defendants share a last name, I refer to Margie Rosario by her first name.

agreement was not "there given" within the meaning of the HSSA, so the HSSA does not govern the transaction.

I disagree. As explained below, I would not hold that the HSSA ceased to apply due to the break in time between the seller's solicitation and the buyer's agreement. Margie was solicited at her home, was presented with the contract at her home, signed the contract at her home, and returned the contract to plaintiff's sales associate at her home. I would therefore hold that her agreement was "there given" within the meaning of the HSSA.

As required in matters of statutory interpretation, my analysis begins with the text of the statute, which in my view does not support plaintiff's interpretation. "Unless defined in the statute, every word or phrase of a statute will be ascribed its plain and ordinary meaning." *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002). "The Legislature is presumed to have intended the meaning it has plainly expressed, and if the expressed language is clear, judicial construction is not permitted and the statute must be enforced as written." *Id*. The word "there" is plainly and ordinarily associated with location rather than time. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "there" as "in or at that *place*") (emphasis added). Had the Legislature intended to require contemporaneity between the solicitation and the sale for the HSSA to apply, it could have easily used the phrase "there and then given" (or "then and there given") to express that intent. The fact that the statute uses only the word "there" indicates that the Legislature intended to require that the solicitation and the sale occur at the same location (i.e., the buyer's residence) but not necessarily at the same time.

Moving beyond the statutory text, plaintiff argues that its interpretation of the statute is required by this Court's decision in *Patrick v US Tangible Investment Corp*, 234 Mich App 541; 595 NW2d 162 (1999). It is true that at one point the opinion in that case says, "Plaintiffs' contracts were not signed in the home at the time the sales presentation was given. In fact, the contracts were not signed until the following month." *Patrick*, 234 Mich App at 545. Thus, the Court in *Patrick* did remark upon the passage of time between the solicitation and the sale. But the opinion then goes on to state: "**Because** the purchase agreement was not *there given* **at the place** of the sales presentation, the transaction is outside the scope of the act." *Id*. at 547 (bold emphasis added). I consider the Court's use of the word "[b]ecause" in that sentence to be important, indicating that it is the dispositive reason for the Court's decision rather than merely an observation. Distinguishing in this way between *Patrick*'s dicta and its holding,[2] and especially given that the word "there" is plainly and ordinarily associated with location rather than time, I would decline to hold that *Patrick* requires contemporaneity for the HSSA to apply.

But even if plaintiff's interpretation of the statute and of *Patrick* were correct, a key premise of plaintiff's argument is that its door knocker's initial visit to defendants' home was the "solicitation" in this case. Although I agree that the door knocker's visit was *a* solicitation, it was not the only one. When plaintiff's sales associate returned to defendants' home, he personally solicited Margie's agreement to the roof-replacement sale by presenting her with a written agreement for her signature. Margie signed the contract at that time and place. Therefore, even

---

[2] Dicta is not binding precedent under MCR 7.215(C)(2). *Hudson v Dep't of Corrections*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367902); slip op at 5.

under plaintiff's interpretation of the HSSA and *Patrick*, Margie's "agreement . . . to purchase" was "there given." MCL 445.111(a).

Plaintiff resists this conclusion by arguing that the HSSA would still not apply because Margie herself contacted plaintiff after defendants' insurance company approved their claim. This, plaintiff argues, puts defendants in a position analogous to the consumers in *Brown v Jacob*, 183 Mich App 387; 454 NW2d 226 (1990), rev'd 439 Mich 865 (1991), as well as *Patrick*, who were deemed not to be protected by the HSSA because they were solely responsible for initiating the disputed transactions.

Again, I disagree; the buyers' circumstances in *Brown* and *Patrick* were significantly different. In *Brown*, the controlling opinion[3] highlighted the fact that the buyer "sought out the . . . contractor without *any* solicitation from the [contractor]" and "clearly *initiated* and controlled the negotiation process." *Brown*, 183 Mich App at 395 (GRIFFIN, J., dissenting) (emphasis added). Similarly, in *Patrick*, this Court reasoned that the seller's "actions were not solicitations inasmuch as [the seller] was responding to [the buyer's] inquiries," which "constitute[d] the *same* affirmative actions as those of the . . . buyer in *Brown*." *Patrick*, 234 Mich App at 547 (emphasis added). In this case, by contrast, it cannot be said that defendants "sought out" plaintiff "without any solicitation," nor did they "clearly initiate[] . . . the negotiation process" or take "the same affirmative actions" as those of the buyer in *Brown*. Rather, unlike in *Brown* and *Patrick*, plaintiff's door knocker personally initiated contact with Margie at her home, so plaintiff was not merely "responding to [defendants'] inquiries." *Brown* and *Patrick*, in which the buyers initiated contact, are therefore not controlling.

Plaintiff also argues that defendants' position is incompatible with the "purpose" of the HSSA, which is to protect vulnerable consumers from high-pressure sales tactics at the home. See *Patrick*, 234 Mich App at 546-547 (discussing the "spirit and purpose" of the HSSA). In my view, that legislative purpose would indeed be advanced by enforcing the HSSA here. Again, plaintiff sent a door knocker to defendants' home uninvited. Margie was later presented with a roof-replacement contract containing terms that she presumably saw for the first time when it was handed to her. She was at home, plaintiff's sales associate personally presented her with the contract, and she signed it then and there, in his presence. Yet the contract did not comply with the consumer-protection notice requirements of the HSSA. In my opinion, and contrary to plaintiff's argument, denying defendants the benefits of the HSSA under these circumstances thwarts its purpose.

Lastly, plaintiff argues that the circuit court gave undue weight to a Pennsylvania appellate court decision interpreting and applying a Pennsylvania consumer-protection statute that contains different statutory language. See *Burke v Yingling*, 446 Pa Super 16, 21; 666 A2d 288 (1995). I agree with plaintiff that it is unnecessary to consult a Pennsylvania law that uses different statutory language from Michigan's HSSA. "However, this Court does not reverse a lower court's decision

---

[3] As discussed by the majority, in *Brown* our Supreme Court entered a peremptory order reversing the judgment of this Court "for the reasons stated in the dissenting opinion . . . ." *Brown*, 439 Mich at 865. The Supreme Court's order in *Brown*, and its incorporation of the *Brown* dissent, is binding precedent. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

where it reached the right result for a wrong reason." *Hawkins v Dep't of Corrections*, 219 Mich App 523, 528-529; 557 NW2d 138 (1996). Our review is de novo, and for the reasons stated above I agree with the outcome of the circuit court's decision, which was to reverse the district court's order denying defendants' motion for a directed verdict and remand for dismissal of plaintiff's complaint.

In sum, I would hold that Margie's agreement was "there given" within the meaning of the HSSA. The district court was therefore required to dismiss plaintiff's suit, so I would affirm the circuit court's order reversing the district court's decision. Accordingly, I respectfully dissent.

/s/ Daniel S. Korobkin